November 20, 2025

The Honorable Alvin K. Hellerstein
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Dear Judge Hellerstein:

I never imagined I would be writing a letter like this—trying to put into words the weight of facing my husband's incarceration while raising our disabled 26-year-old son on my own. Dave is doing everything he can to prepare us for the possibility of his absence. I now understand the ins and outs of our finances, where to take the cars for service, and who to call when the HVAC breaks down—things he always takes care of without a second thought. Still, no amount of preparation can fill the void his absence would leave in our daily lives.

Dave and I met in 1992 while attending Stephen F. Austin State University in Nacogdoches, Texas, where Dave earned a bachelor's degree in business and I earned a degree in social work. One night I walked into a party and Dave was in the middle of the dance floor, dancing the sprinkler without irony or embarrassment. In that moment, I knew I wanted to date Dave because I realized anyone who is that unapologetically himself was someone I wanted in my life.

The decision to start a relationship with Dave has defined my adult life. While dating we learned that we were both raised in close-knit, middle-class families where hard work, faithfulness, and integrity were the values we witnessed every day. Our parents' stable and enduring marriages gave us strong examples of commitment and resilience. From the very beginning of our relationship, Dave and I shared these same values, building our life together on love, family, and the belief that we could weather any challenge side by side. As with many young people, we had no idea how many storms we would weather together in life, including this one.

Dave and I married on February 12, 1994. We'd each lived with our parents to save money for a downpayment on a home after graduating from college, before getting married. When we got married, we made a combined $41,900 annually. After graduating from college, I began working at Homes of St. Mark, where I served as Director of Foster Care. I made $24,000. During that time, Dave was finding his place in his career. While searching for work, he took a position as a salesperson at Best Buy to support us. Over the years, Dave proved to me time and again that he took his responsibility to provide for us with the utmost seriousness. Fortunately, Best Buy was a short-term position because Dave was offered and accepted a job at AIM. While at AIM, Dave recognized the need to further his education to provide greater stability and opportunity for our soon-to-be family. Determined to build a better future, he enrolled at University of St. Thomas and pursued a master's degree in finance—all while working full time.

Dave says that the day our son Carson Smothermon was born was both the best day of his life and the worst day of his life. I share his sentiment. Carson was born on March 29, 1999, with cerebral palsy—a permanent neurological disorder that affects his movement, motor skills, and

**Defendant's Exhibit**

**15**

USA v. David Smothermon

muscle tone. I was thirty-two weeks pregnant when I unexpectedly went into labor. There was nothing doctors could do—our son was born nine weeks early, weighing less than four pounds. Newborn Carson was in respiratory distress and had a brain bleed. He was rushed to Texas Children's Hospital and placed on a ventilator in the NICU. I didn't get to hold him or even see him. We were brand new parents and didn't know if our child would survive the night. We clung to each other, and I can't imagine having anyone else by my side.

For the next twenty-four days, our entire focus was on our son Carson as he fought in the NICU. We lived in a hotel in downtown Houston by the hospital so we wouldn't have to commute to our suburban home. Our daily meal was McDonald's shakes and fries because McDonald's was the only restaurant open when the NICU visiting hours ended. Dave would read <u>Guess How Much I Love You</u> in the NICU to Carson, flicking Carson's tiny feet to make him start breathing when the monitors alarmed. We lived by those monitors. Before Carson was discharged, we asked, "Where do we get our own monitor?" Without them, how would we know if Carson was breathing? Once we finally brought him home, we would sit and watch him sleep, staring at his chest rising and falling with each breath. We became Carson's monitors.

As if having a son in the NICU wasn't hard enough, Dave was also laid off from his position at Ernst & Young during those twenty-four days. We were going to lose our health insurance. My heart stopped. Dave put on a brave face and began searching for work. He found a job selling mobile homes, which he did for many months to ensure that we were taken care of. I always knew that Dave would do whatever it took to take care of Carson and me.

We didn't know when Carson was born that he had cerebral palsy. As a social worker, I became concerned when Carson wasn't meeting his developmental milestones. At six months old, Carson was diagnosed with cerebral palsy. Cerebral palsy is a lifelong condition and presents daily challenges. Dave and I were overwhelmed with emotion, uncertainty, and fear of what lay ahead. Together, we made the decision that I would leave my job to care for Carson full time. From that moment on, our lives became centered around ensuring his health, development, and emotional wellbeing. Dave also became our sole financial provider.

I don't know if you have a disabled child, but I hope you can only imagine the toll it takes on both the child and the parent—therapies, appointments, surgeries, decisions, worry, and stress. When Carson was in school, Dave attended every single parent-teacher conference and special education meeting. He never missed one of Carson's medical appointments, including multiple surgeries, countless Botox treatments, casting, and EFO braces. Carson has spent most of his life in articulation therapy, physical and occupational therapy, weekly massages, aqua therapy, and equine therapy—all aimed at improving his gait and mobility. Without these treatments and without Dave's unwavering support, our son would not be where he is today.

Although Carson is legally an adult, he still lives with us and continues to need full-time care. There are days and nights when his back spasms and chronic pain are so overwhelming that he cannot get out of bed for several days. In those moments, he depends on us for everything: meals in bed, medication, stretching, massage—whatever is needed to ease his pain and provide emotional comfort. Watching your child suffer like this is heartbreaking.

Dave is doing everything he can to get us ready for his potential absence, but the pressure of making critical medical decisions alone is overwhelming. I would be left alone to navigate conflicting medical opinions, complex treatment plans, potential surgeries, and decisions about mobility equipment, many of which are extremely costly and not covered by insurance. These are not optional expenses; they are vital to Carson's quality of life. Without consistent financial and emotional support, his health and well-being would suffer greatly.

In recent years, our family has faced yet another major challenge. For several years, I experienced unexplained exhaustion, nausea, and stomach pain, which I attributed to the stress of caring for aging parents, managing Carson's disability, and dealing with Dave's legal situation. As my condition worsened, Dave immediately recognized the severity of my symptoms and rushed me to the hospital. I underwent emergency surgery to remove a mass from my small intestine.

Shortly after, on September 9, 2024, I received the devastating diagnosis of Stage IV Non-Hodgkin's Lymphoma—an incurable illness. From that moment on, Dave never left my side. He attended every appointment, test, and treatment, consulted with doctors, researched every option, and made sure I received the best care possible. All the while, he continued to care for Carson and manage our household without missing a beat. He was my rock, caring for both me and our son with unwavering strength.

The thought of getting sick again while Dave is in prison is terrifying. I truly don't know how I could care for Carson alone. My heart breaks at the idea. We have always parented together, side by side. We've never had a nanny or outside help in caring for Carson—it's always just been us. No matter how much Dave tries to prepare me, I'll never be ready.

Dave's actions in 2016 still leave me stunned. I know that Dave brought the stress of this case on himself. The weight of his actions and his guilt, however, have taken a severe emotional and mental toll. As painful as this is to share, Dave has begged me on multiple occasions to let him end his life. These moments are heartbreaking. A man once filled with joy, life, and confidence now believes the world would be better without him. The only other time he's acted this way was after he resigned from Trammo in 2016. I want you to know that he asks for my permission instead of acting on his own because even in the depths of his despair, he knows deeply and fundamentally how much Carson and I need him.

The shame Dave feels for committing a crime, for acting uncharacteristically, drives these feelings in part. We've also learned that he suffers from major depressive disorder. The silver lining of this entire case has been that we now know his diagnosis. He is doing all he can to address it. He's started therapy and sees a psychiatrist. He's working on getting better every day but has much more work to do. Nobody's mental health improves in prison. I worry so much about his future and losing the progress he's made.

Dave has his flaws, but shirking responsibility is not among them. Our family knows that his actions hurt many people. I am not in any way trying to justify or excuse what Dave did. I am trying to help you understand the flawed human being who committed these acts. He is not a fraudster—he is a man who made some terrible decisions that he will regret for the rest of his life. Dave

Smothermon is so much more than the criminal defendant who will stand before you on November 20, 2025—he is a devoted father, loving partner, and the foundation of our family. We need him. Our family needs him home—where he can continue to be our rock. He is the cornerstone of this family. I would do my best to hold everything together, but the truth is, I cannot do it alone.

Thank you for your time and thoughtful consideration. I write this letter with the deepest respect for the Court, and with hope for compassion.

Sincerely,

Angie Smothermon



